The next case on the calendar is Peace Ranch, LLC v. Bonta. Good morning, Your Honor, and may it please the Court, my name is Paul. Sorry. Mr. Beard, if you can hold on. I think counsel from the last case are leaving, and counsel for this case has to sit down. So if you can just wait a minute. Thank you. We know you can't quite see the back of the courtroom, only the front of the courtroom. Thank you. Thank you, and good morning, Your Honors, and may it please the Court. My name is Paul Beard, and I represent the appellant Peace Ranch, LLC. I'd like to reserve five minutes of my time for rebuttal. This case concerns a state statute, AB 978, that the legislature designed and enacted with a specific intent of targeting a single mobile home park, Peace Ranch, by substantially limiting rent increases at the park and thereby undoing over 60% of the park's leases. State law doesn't impose rent control on any other mobile home park in the state, and I think it's telling that in two years of litigation, the state has not identified a single park other than Peace Ranch that is subject to any state rent control, including AB 978. For these reasons, we believe 978 is unconstitutional and should have a full and fair hearing on the merits of our constitutional claims, but the case does come to the Court on an order of dismissal based on standing, and for the reasons stated in our briefs, we are respectively requesting that the Court reverse the dismissal and allow Peace Ranch to have its day in court. Today I'd like to focus on the standing question because it is the threshold question, and then if I have time, I'd like to make a few comments about the bill of attainder claim. So turning to standing and specifically injury in fact, the district court's dismissal as well as the state's brief, they focus on the pre-enforcement standing framework to argue that Peace Ranch lacks Standing. But as we note in our brief, Peace Ranch doesn't even need to rely on the pre-enforcement framework, and that's because the complaint alleges actual ongoing economic harm resulting from the law's operation and effect, and that's because the law has required Peace Ranch to comply with 978, and we believe under this court's decision in National Audubon Society v. Davis, that's sufficient for standing even though there's been no actual or real threat of enforcement. So you're saying they're withholding a much larger rent increase because of the enforceability of the statute, is that correct? That is correct. Can you tell me what evidence is in the record to establish that Peace Ranch is actually covered by this statute? There's a lot of evidence. There's evidence in the legislative history of the law that specifically calls out the park as a park that straddles two jurisdictions. Right, but that's the assumption of the statute, is it not? That was the assumption of the legislature that it spills over between, what was it, Fullerton and the other city, Anaheim? Anaheim, yeah. So is there a declaration from the owners saying, no, that's not true, they're two separate entities? Well, recall that we've not made it as far as submitting declarations. We have our first amended complaint that does allege specifically that the park straddles two cities and is covered by the law. So you're relying on the allegations of your complaint? Correct, and we believe that for purposes certainly of a standing analysis, as well as the motion to dismiss the claims, that those allegations should be deemed true for purposes of assessing those issues. It seems that on both sides there's some ambiguity as to the position. So your ultimate position, as I understand it, is that you would determine that they are two separate parks and therefore not subject to the rule, but alternatively that because the legislation is targeted at Peace Ranch and because the government hasn't disavowed that it's not two separate parcels that you need to go forward so you can get a determination in effect. Judge McEwen, I think that's correct, except I would reverse the two alternatives. Our primary allegation is that this park does straddle two cities and is within the confines of AB 978. In the alternative, and to preserve our rights, we would like the opportunity if necessary, and if we deem it appropriate, to pursue the other theory that, wait a second, this may not be one park straddling two. It has two different addresses, so as a matter of law, it may not be one park straddling two cities. So I would just change the emphasis, Your Honor, on what you said and say that we believe the better allegation and the one that we put forth obviously in the Federal District Court is that this owner is covered by the law. And if you went, those questions as to coverage ultimately go to the merits, correct? Well, it appears – I would put it this way. The parties agree, certainly for purposes of this federal lawsuit. The parties agree that the park is covered. The state hasn't denied that it's covered. It believes it is covered, and in fact, that's the important point, is that the state and the other actors who are able to enforce this law, district attorneys, cities, counties, they all believe that this law applies. That's why the law was made was for this park. And so while we have reserved the alternative argument, our position is that that does not in any way undermine our claims, let alone our standing to pursue these constitutional issues. Counsel, I understand alternative pleading, which can be inconsistent, but it seems to me that this is a fact that is uniquely known to your client. If there are two separate entities as opposed to one to whom the renters who live in Fullerton pay their rent to a different entity than the people who live in Anaheim, why can't you simply allege that in the complaint, in which case then we could push the state to answer the question whether or not your clients are even covered by the statute. But as you've pled the case in the alternative, I don't know what to do with the question of standing here. So it's not an issue of two entities getting paid differently by the tenants, and I think it's not just actually a factual issue. It's most likely a question of law as well as to whether these two parks for purposes of the statute, whether the park for purposes – or LLC or whatever it is that owns the RV park, which happens to straddle two different cities, then you clearly are covered by the statute, are you not? Correct. That is our position, is that we are covered. Your client doesn't know that now? That's what I'm finding hard to understand. Well, remember, the definition of a qualified mobile home park, it's not entirely fleshed out in the statute. It simply says a mobile home park that straddles two cities, two incorporated cities. And so there would be – But if they're two different parks in two different cities, then they don't straddle, do they? That is correct. The alternative allegation that we may not be subject to this statute because it's two different parks, that certainly would preclude the allegation that it does straddle. It would be one park on either side of the city. But to date, every government after the City of Anaheim, the City of Fullerton, the tenants, and even the owner has acted as if this is one park. The state has not denied it. And it's really the way the law was created, what the state thinks and what the attorney general thinks that creates the harm to the park. Whatever the park might believe, it might be able to prove in the future as a matter of fact and as a matter of law. What matters here is what the state believes. I point – there's a really interesting discussion about this issue in one of the cases cited in the briefs, Lopez v. Candela, involving standing. And the court there, this court there, said one of the questions, of course, for standing – and this was actually in the pre-enforcement paradigm. But one of the questions about standing is whether the challenged law is inapplicable to the plaintiffs, quote, either by its terms or as interpreted by the government. And in that case, the plaintiff hadn't adequately proven his intent to violate the challenged policy. He hadn't even shown that the policy applied to him. The allegations in our first amended complaint are just the opposite. We allege, A, that the law applies to this park and, B, that the state and the attorney general also believe the enforcers, the government as Lopez puts it. And so I think this just underscores not to belittle the district court's ruling at all or even the questions of the panel. I think this is a red herring because what matters on the injury front is not what the plaintiff thinks in his head. It's what the state is threatening, what the state has done via its action in this case to target a particular park. And so, again, the allegations need to be accepted as true. One of the allegations that we believe the park may be two parks, that is just an inconsistent pleading allegation that can be reconciled under the federal rules, federal rule number eight. Is there anything that would prohibit your client today from creating two entities, two LLCs, one to serve as the owner-landlord for the Fullerton RV spaces and one to serve the RV spaces in Anaheim? In which case that would solve the problem, would it not? It would remove your client from the reach of the statute. I don't know if that is legally or even factually feasible to separate the parks. What prevents you from doing it? I don't know. I don't know the answer as to whether that is feasible to split the parks in two. Well, if there were, then you would have be incurring costs at a minimum, which should give you standing to determine. So I go to your alternative claim. You say a declaratory. If we sweep away everything and we just say you want a declaratory judgment that this does not apply because it's one mobile home, it's not one, it's two. And if you just take that on its face, I don't know why, to be honest, there wouldn't be standing. I'll certainly ask the state. If you come in with or without enforcement and you want a declaratory judgment on applicability of a law to your mobile home, I don't know why you wouldn't have standing on that alone. Is there some – am I missing something there? Judge McHugh, and I'm assuming you're hypothesizing that we could have brought a declaration to establish whether the law applies to the park. Is that the hypothesis that you're asking about? I don't think it's a hypothesis. I guess I'm reading from your prayer for relief. Oh, the prayer – yeah, the prayer does not ask. It says, alternatively, a declaratory judgment that AB 978 does not apply because RLP is not one mobile home park that straddles two incorporated cities. Oh, I'm sorry. Your Honor, I think you may be looking at the original complaint. Did you drop that? Yes, we did drop that. And so the First Amendment complaint focuses exclusively – is premised exclusively on the allegation that this is a park covered by the law, and we're asking for that law to be struck down, declared unconstitutional and struck down. And that is at excerpts of the record, page 192. 192, all right. So the prayer for – I see that I am running short on time here, but I will just close with this, that we did drop that claim because it was apparent – well, number one, that would have been a state law claim. And the second thing as well is that the district court obviously, to us at least, had problems reconciling those two competing pleadings and prayers for relief, and so we decided to focus on what we thought was the better and easier allegation and one that is supported by the legislative history and the way the park operates and the way different government actors have treated us over the years that, indeed, this park is covered. And unless the court has any other questions, I'd like to reserve my 35 seconds for rebuttal. Thank you. Good morning, Your Honors. May it please the court, my name is Megan Richards and I represent Rob Bonta, the Attorney General of California. Peace Ranch has the burden of establishing standing in this case by showing a legally cognizable injury that is concrete, particularized, actual, and imminent. But here, Peace Ranch has contended that the challenge law doesn't apply to its parks. Well, it pleads it in the alternative that either it is or it isn't, so you want to pick one prong and he's pointing to the other. So what do we do with that? It's not, Your Honor, it's not an alternative pleading because all of the counts in the complaint rely on a theory that the law does apply to Peace Ranch. And Peace Ranch has dropped the declaratory relief claim, so it's no longer an alternative pleading because it doesn't actually go to any claim that's in the amended complaint. Are you able to commit that the state won't enforce the law against Peace Ranch if Peace Ranch raises the rents more than 5%? No. No, that's what I thought, and that's why we're here. I mean, so if that is hanging out there and you're not able to commit to that, why shouldn't, isn't that enough for standing, go forward, and then we can litigate the merits, is it one, is it two, is it something else? Because typically the court would deal with the threshold issue of does the law even apply before going on to the constitutional issues. And so even though the Attorney General does believe this law applies to Peace Ranch, it seems in the legislative history that the legislature intended this law  Even though the Attorney General believes that, if a court were to find that it doesn't apply to Peace Ranch after the law has already been held unconstitutional, it would seem, it just seems backwards. So let me just get the state's position. The state's position is that the law applies to Peace Ranch? That's correct. And the state is unwilling to commit that it wouldn't enforce the law? That's correct. And they will not raise their rents above what the law permits because it's hanging over their head like a sword of Damocles. So why isn't that sufficient to establish standing? Because they still contend that the law doesn't apply to them. But you say it does. Right, that's true. But it's as though they want two bites of the apple. They want to come to federal court. And it looks like you're walking a very fine tightrope here. It is a little bit nuanced. It's more than nuanced. You know, if you're Peace Ranch and they can't really raise their rents more than 5% because you've just made the statement that the law applies to them, a law which they claim was targeted to only one mobile home park in the entire state, which raises, at least in their view, constitutional issues, why isn't that enough for standing? If they contend that the law doesn't apply to them, they could first seek declaratory relief in state court. Where is the rule that says they would have to do that? There isn't a rule that says they would have to do that. But typically that should be resolved before reaching constitutional questions of whether the law is unconstitutional. And in this case the law actually does apply. But isn't that a decision for a court to make, not the attorney general? In other words, let's say there is standing, and then you get into the district court, and the district court might say precisely what you said. But that's not in front of us. Here is this litigation strategy of other ways they might have gone about this. So it seems to me you've forced them into the lawsuit because of the statements you made at the outset of the argument about the applicability of the law. Those are statements we've made during the course of the litigation here in defending the law. But what else could they? I mean, you know, that's even more binding than just somebody throwing off a statement. In the litigation you've made the statement that it's enforceable, and you wouldn't commit to not enforcing it. So it's kind of a classic pre-enforcement action, isn't it? The main difference is their contention that it doesn't apply to them. That is the main difference. Counsel, why shouldn't we simply reverse the dismissal and send it back to the district court, and then you can bring a summary judgment motion to adjudicate whether or not the law applies and solve this problem? That would be an option, except it raises a state law question that might be better suited to be decided by a state court. However, if the court finds standing in this case, it would be appropriate to remand the case. He's got a federal takings claim, does he not? Sorry, excuse me? He's got a federal takings claim. He does. He does have a federal takings claim. So there's federal jurisdiction here, and the district court can exercise supplemental jurisdiction over a state law claim. That's correct. You could then tee this issue up and get a definitive ruling by the court, either the statute applies or it doesn't. That's correct. Why shouldn't we do that? Your Honor, if the court finds standing here, that would be an acceptable thing for the court to do. But could the attorney general go into state court and ask for a declaratory judgment? Yes. But you haven't done that. No. You're just saying he should do that but not you. Yes. Not you meaning the state, not you personally, Megan. That's true. That's true. The attorney general could seek declaratory relief in state court also. And then we'd have a whole question of whether comedy and whether something would be stayed pending a state court resolution. But we don't have any of that. All we have is one federal lawsuit. And you wish they would go into state court. That would be an appropriate way to solve the dispute of whether the law applies to them. Okay. Thank you. And I want to clarify something, too. Mr. Beard said that this law only applies to Peace Ranch, and that's not true. I believe in our brief we actually cited a case that's pending right now in state court where another mobile home park is actually suing the attorney general over enforcement of this law. Or not over enforcement of the law, but over other. They're raising other constitutional questions regarding this law because the law does apply to their park. So is it another Orange County? It is. It does happen to be in Orange County. Although we believe that the law applies statewide, but this park is in Orange County. Well, it can't apply statewide because the legislature established a pretty narrow range of population, did it not, that only applies to Orange County. Well, the actual definition of qualified mobile home park within the law that they codified has nothing about population range. It says that it applies to parks in two or more jurisdictions. And even the uncodified intent section doesn't say that it doesn't apply to other places. It just says they intended to apply. So what does the population range apply to? I mean, I've never seen that in a state statute before. Is that fairly common in California? No, it's not common. This is a very odd range. And we realize you didn't write the statute, but it's about as targeted as one could get on its face. Your Honor, there is no doubt that the legislature intended this law to apply to the tenants of Peace Ranch. But they did write the law so that it would apply to other situations where there are tenants in parks that are in two or more jurisdictions. There's some language in the legislature about how they were concerned that tenants in parks in two or more jurisdictions may be disadvantaged because of the way the park is split into two jurisdictions. Disadvantaged in that one of the cities might enact rent control and the other city might not. Yes, that would be one of the ways, yes. And it sounds like we've covered standing, but I can move on to some of the constitutional claims if the court is considering any of them. For example, I'll go to the bill of attainder claims since Mr. Beard mentioned it. It wouldn't be a bill of attainder if it applies to more than one, would it? No, it wouldn't usually be a bill of attainder if it applies to more than one park. And here also, even if it did apply to only Peace Ranch, which we know is not true, it applies to other parks, it doesn't inflict punishment. Laws regulating the economic relationship between landlords and tenants do not resemble punishment within the historical meaning of the term. They're not banishing anybody or imprisoning anybody. What's the only remedy here to give rights to the tenants to bring claims against the landlord if the landlord exceeds the cap on rents provided in the statute? The statute also gives enforcement authority to the attorney general and to district attorneys to enforce. Are there civil penalties? Yes, there are civil penalties. Okay. But the intent of the law is... So the intent of the law I think is clear from the legislative history that it was not to punish Peace Ranch as the owner of this park, but to give rent relief to the tenants there. And you can see that the law wasn't intended to punish in the way that the legislature tried to moderate the economic effect on the landlord by providing for increases of rent up to 5% per year and also not regulating any of the rent that the landlord could charge to new tenants. The law also sunsets in 2030. And you also see some legislative intent expressed in the statute about their concern about mobile home owners in particular who own their homes but rent from a park where they don't own the land. This court and the state courts and the legislature have all expressed how that unique economic relationship can lead to bad economic consequences for tenants who cannot move their mobile home if the rent... But the typical situation is they own the mobile home, but the landlord owns the land on which the mobile home sits, and that's what they're charging rent for, right? That's correct. That's correct. And the unique situation there is that most mobile homes are not actually movable. So they're sort of in a bind if the rent goes up and they need to leave. So if...let's see. I have two minutes left. If the court is interested in any particular constitutional question, I can talk about it here. But we think that the court should find that there's no standing here and affirm the district court's judgment. We also think that if the court finds standing, the parties have adequately briefed the constitutional claims, and the court could go on to consider whether the plaintiff raised constitutional claims under 12b-6. But it would also be appropriate to remand the case back to the district court and let the district court decide those questions. Wouldn't that help us avoid having to reach the constitutional issues if there's a question as to whether the statute even applies? Yes. Okay. Just out of curiosity, did the state argue no standing in district court, or was it something the district court decided on itself? We argued no standing. Great. Thank you. Thank you, Your Honor. I see I only have 30 seconds, so I'll be very brief. On the question of whether there might be multiple parks swept up by this law, I have no information one way or the other whether that's true. However, a bill of attainder claim can still be premised on a law that targets one, two, or even several. And I would refer the court to the decision of the United States Supreme Court in United States v. Brown, cited in the briefs 381 U.S. 437, where the law targeted communists and barred them from holding office. Unless the court has any questions on any of these issues, we will submit. Great. Thank you both.
judges: McKEOWN, TALLMAN, LEE